The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **May 2, 2022**

**No. A-1-CA-38429**

**ADAM TRUBOW and PATRICK MCBRIDE,**

Appellants-Petitioners,

v.

**NEW MEXICO REAL ESTATE COMMISSION,**

Appellee-Respondent.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

Marrs Griebel Law, Ltd.
Clinton W. Marrs
Albuquerque, NM

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Albuquerque, NM

for Petitioners

Hector H. Balderas, Attorney General

Santa Fe, NM
Lori Chavez, Assistant Attorney General
Albuquerque, NM

for Respondent

## OPINION

**BACA, Judge.**

{1}     A licensing board, subject to the Uniform Licensing Act (ULA), cannot take disciplinary action against a party later than two years after the improper conduct is discovered by the board. *See* NMSA 1978, § 61-1-3.1(A) (2003). On appeal, Adam Trubow and Patrick McBride (Petitioners) argue (1) the statute of limitations under the ULA barred the New Mexico Real Estate Commission (NMREC) from bringing disciplinary action against them, and (2) substantial evidence did not support NMREC's disciplinary action. Agreeing with Petitioners, we conclude that the disciplinary action brought by NMREC was barred by the statute of limitations. Consequently, we do not address Petitioner's substantial evidence claim.

## BACKGROUND

{2}     On December 6, 2017, NMREC revoked Petitioners' real estate broker licenses and issued a fine after determining that Petitioners made false statements regarding their business relationship with Ms. Lisa Donham and acted in bad faith regarding negotiations for the short sale of her home. It is undisputed that the

2

disciplinary action was based on allegations made in a letter from Ms. Donham dated April 6, 2011 (2011 Letter).[1]

{3}     On January 15, 2014, Ms. Donham submitted a complaint against Petitioners, along with the 2011 Letter, to the Consumer Protection Division of the New Mexico Attorney General's Office (NMAG). On July 2, 2014, NMREC received an email setting forth Ms. Donham's complaints against Petitioners from the NMAG. Eight days later, on July 10, 2014, NMREC opened the email from the NMAG and opened a case for investigation.

{4}     On July 8, 2016, two years and six days after it received the email from the NMAG alerting it to Ms. Donham's complaints, NMREC issued a notice of contemplated action (NCA) indicating formal action against Petitioners for the denial, suspension, restriction, or revocation of Petitioners' real estate licenses. Petitioners argue that the statute of limitations, Section 61-1-3.1(A), barred NMREC from bringing disciplinary action against them.

**DISCUSSION**

{5}     Before we discuss the merits of this appeal, we briefly address NMREC's challenge that Petitioners failed to preserve their time-barred argument on appeal. NMREC argues that Petitioners neglected to raise the issue of whether NMREC,

---

[1]In addition to the time-barred arguments, Petitioners also argue that the 2011 Letter was unverified. We do not address the merits of these arguments because we dispose of this claim as being time-barred.

3

with reasonable diligence, should have discovered the claim against them before July 10, 2014. We disagree.

{6}     "To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (internal quotation marks and citation omitted). "The primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791.

{7}     Here, the record reveals that Petitioners filed a motion seeking dismissal with NMREC and argued that the action was time-barred due to the statute of limitations. The motion laid out its objections to NMREC and created an adequate record for purposes of appeal. NMREC addressed Petitioners' argument that the NCA was issued past the statute of limitations, denied Petitioners' motion to dismiss, and found no evidence to confirm whether NMREC opened the email prior to July 10, 2014, the stamped date on which the email was opened. Additionally, Petitioners renewed the statute of limitations argument to the district court in a statement of

4

appellate issues. The district court also rejected Petitioners' argument and agreed with NMREC that, despite receiving the email on July 2, 2014, the contents therein were not discovered until July 10, 2014, when the email was opened.

{8}     The record thus plainly establishes that Petitioners alerted both NMREC and the district court to its argument against the timeliness of NMREC's NCA in the form of written pleadings, allowing both adjudicative bodies to make an informed decision as to the issue raised. Considering the preservation requirements and their purposes, we conclude Petitioners properly preserved their statute of limitations argument and turn now to the issues raised on appeal.

## I.     The Discovery Rule Applies to the ULA

{9}     The ULA provides professional licensing boards with a means for "protecting the public by enforcing professional standards with respect to the conduct of its licensees." *N.M. Bd. of Psych. Exam'rs v. Land*, 2003-NMCA-034, ¶ 26, 133 N.M. 362, 62 P.3d 1244. In addition, the ULA "reflect[s] a legislative decision regarding the balance to be struck between the public's need to be protected and the licensee's individual property right to earn a livelihood under a state-conferred license." *Varoz v. N.M. Bd. of Podiatry*, 1986-NMSC-051, ¶ 12, 104 N.M. 454, 722 P.2d 1176. Within the ULA, Section 61-1-3.1(A) states:

> An action that would have any of the effects specified in Subsections D through N of [NMSA 1978,] Section 61-1-3 [(1993, amended 2020)] or an action related to unlicensed activity shall not be initiated by a board later than two years after the *discovery by the board* of the conduct that

would be the basis for the action, except as provided in Subsection C[2] of this section.

(Emphasis added.) Here, the parties agree that under Section 61-1-3.1(A), the applicable statute of limitations is two years. Therefore, because NMREC issued the NCA on July 8, 2016, the issue before this Court is whether NMREC "discovered"—within the meaning of the ULA—the conduct on which the discipline was based before or after July 8, 2014. The answer depends on the meaning of the phrase "discovery by the board" in Section 61-1-3.1(A). Consequently, we must interpret Section 61-1-3.1(A).

{10}     Generally, there are two basic standards that trigger the beginning of the statute of limitations period: the discovery rule and the occurrence rule. *See Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶ 47, 121 N.M. 821, 918 P.2d 1321 (describing the two standards in the context of medical malpractice claims, "[o]ne is sometimes called the 'discovery rule,' . . . [and t]he other standard is sometimes called the 'occurrence rule'"). While the discovery rule focuses on the date the injury was discovered, or, importantly, reasonably should have been discovered, the occurrence rule fixes the accrual date on the occurrence of a given act. *Id.* Accordingly, in order to resolve this appeal, we first determine which rule governs the application of Section 61-1-3.1(A) to these circumstances.

---

[2] Subsection (C) applies to the New Mexico state board of psychologist examiners and is inapplicable here. *See* § 61-1-3.1(C).

{11}    "The meaning of language used in a statute is a question of law that we review de novo." *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61. "[W]hen presented with a question of statutory construction, we begin our analysis by examining the language utilized by the Legislature, as the text of the statute is the primary indicator of legislative intent." *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361. "In furtherance of this goal, we examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." *Leger v. Gerety*, 2022-NMSC-007, ¶ 26, 503 P.3d 349 (internal quotation marks and citation omitted). The plain meaning rule requires a court to give effect to the statute's language and refrain from further interpretation when the language is clear and unambiguous. *Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153 ("The plain meaning rule of statutory construction states that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (alteration, internal quotation marks, and citation omitted)). "However, if 'adherence to the literal use of the words would lead to injustice, absurdity or contradiction, we will reject the plain meaning in favor of an interpretation driven by the statute's obvious spirit or reason.'" *Cordova v. Cline*, 2021-NMCA-022, ¶ 7, 489 P.3d 957 (quoting *State v. Trujillo*, 2009-NMSC-012,

7

¶ 21, 146 N.M. 14, 206 P.3d 125). "We also consider the statutory subsection in reference to the statute as a whole and read the several sections together so that all parts are given effect." *Bishop*, 2009-NMSC-036, ¶ 11. In addition to the statutory language, we examine "the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." *Maes v. Audubon Indem. Ins. Grp.*, 2007-NMSC-046, ¶ 11, 142 N.M. 235, 164 P.3d 934; *see State v. Rivera*, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939 ("In other words, a statutory subsection may not be considered in a vacuum." (internal quotation marks and citation omitted)). "The guiding principle of statutory construction is that a statute should be interpreted in a manner consistent with legislative intent." *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69. We now apply these principles of statutory construction to the issue before us.

{12}   As stated above, in this case, our inquiry begins with ascertaining the meaning of the phrase "discovery by the board" contained within Section 61-1-3.1(A). We hold it to mean that the statute of limitations begins when a licensing board—subject to the ULA—discovered or with reasonable diligence should have discovered that a disciplinary action exists. *See Williams v. Stewart*, 2005-NMCA-061, ¶ 12, 137 N.M. 420, 112 P.3d 281.

{13}    In its original form, Section 61-1-3.1(A) (1981)[3] was an occurrence statute without a provision "tying the running of the limitations period to discovery of the underlying conduct." *N.M. Real Est. Comm'n v. Barger*, 2012-NMCA-081, ¶ 11, 284 P.3d 1112. That changed, however, when "[i]n 1993, the Legislature amended the statute to bar board action initiated later than two years *after the discovery* of the conduct." *Id.* ¶ 11 (internal quotation marks and citation omitted). While the most current version of Section 61-1-3.1(A)—applicable in this case—was last amended in 2003 to bar any action "initiated by a board later than two years after the discovery *by the board* of the conduct," § 61-1-3.1(A) (emphasis added), our focus remains on the 1993 addition of the term "discovery" as relevant to the Legislature's intention to extend the discovery rule to the ULA. *See Barger*, 2012-NMCA-081, ¶ 22 ("The 2003 amendment clarifies that the Legislature intended the triggering event in Section 61-1-3.1(A) to be a licensing board's discovery of the conduct underlying an NCA.").[4] Unquestionably, *Barger* clarified that the 1993 amendment added a discovery element which made Section 61-1-3.1(A) "[a] discovery statute of limitations." *Barger*, 2012-NMCA-081, ¶ 14.

---

[3]Under the 1981 version, Section 61-1-3.1 barred any action initiated by a licensing board "later than two years after the conduct that would be the basis for the action." Section 61-1-3.1(A) (1981) (internal quotation marks omitted).

[4] We note that neither party argues that Section 61-1-3.1 remained an occurrence statute after the amendment of 1993.

{14}     In *Barger* we recognized that NMREC brings actions against licensees similar to the way plaintiffs bring actions against other parties. *See id.* ¶ 10 ("[I]t is a board's discovery that triggers the limitations period because, generally speaking, statutes of limitations encourage plaintiffs to bring their actions while the evidence is still available and fresh." (alteration, internal quotation marks, and citation omitted)). Given the discovery rule's frequent application in other areas of law in which prescriptive periods exist, the Legislature's addition of a discovery element regarding a statute of limitations supports the proposition that the standard discovery rule applies.

{15}     Just prior to the 1993 amendment of Section 61-1-3.1(A), our New Mexico Supreme Court held in *Roberts v. Southwest Community Health Services*, 1992-NMSC-042, ¶¶ 25-27, 114 N.M. 248, 837 P.2d 442, that in medical malpractice cases, the discovery rule controls, and "the cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause." Central to our Supreme Court's holding was its appreciation of the development and expansion of the application of the discovery rule with respect to statutes of limitations. As to this issue, the Court stated that "[t]he great weight of authority, both in decisions and commentary, today recognizes some form of the 'discovery rule,' i.e., that the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists." *Id.* ¶ 24. Thus, the

Legislature's use of the term "discovery" in Section 61-1-3.1(A), coupled with the meaning of that term at the time, supports our conclusion that the discovery rule applies to Section 61-1-3.1(A). "We presume that the Legislature [i]s aware of existing law . . . at the time it enact[s new law]." *PNM Gas Servs. v. N.M. Pub. Util. Comm'n*, 2000-NMSC-012, ¶ 73, 129 N.M. 1, 1 P.3d 383.

{16}     Therefore, consistent with the discovery rule, the statute of limitations under Section 61-1-3.1(A) begins when a licensing board discovers or with reasonable diligence should have discovered the conduct upon which the disciplinary action is based. *See Williams*, 2005-NMCA-061, ¶ 12. We now turn to the application of this rule to the facts of the case before us.

## II.     The NMREC's Claim Against Petitioners Was Untimely

{17}     Where there are undisputed facts that show that the plaintiff knew or should have become aware of the facts underlying his or her claim by a specific date, the reviewing court may decide the issue as a matter of law. *See, e.g.*, *Brunacini v. Kavanagh*, 1993-NMCA-157, ¶ 29, 117 N.M. 122, 869 P.2d 821 ("Although the time when a party is deemed to have discovered, or reasonably should be held to have discovered the malpractice of an attorney, is generally a question of fact[;] nevertheless, where the undisputed facts show that [the p]laintiffs knew, or should have been aware of the negligent conduct on or before a specific date, the issue may be decided as a matter of law.").

11

{18}     Having held that the discovery rule applies in this case, the limitation period began when NMREC "discover[ed], or should have discovered in the exercise of reasonable diligence, the facts that underlie [the] claim." *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶ 26, 140 N.M. 111, 140 P.3d 532. Thus, Petitioners contend that NMREC "should have discovered" Ms. Donham's complaints against Petitioners on July 2, 2014, when the email was received. NMREC does not dispute that the email from the NMAG was received by it on July 2, 2014. However, NMREC contends that discovery occurred, in this instance, when the email was opened and processed. In support of their argument that the limitation period begins upon opening and processing of the email, NMREC, citing *Barger*, 2012-NMCA-081, ¶ 10, states discovery is "knowledge of the conduct that triggers the statute of limitations." Thus, NMREC contends that in this case, because the opening and processing of the email gave it knowledge of the claim, the limitations period began at that moment. We disagree. If we were to adopt NMREC's argument, NMREC would then define the parameters by which something is discovered for purposes of triggering the statute of limitations period. This would be contrary to the purpose of a statute of limitations. "[A] statute of limitations seeks to further basic fairness to the defendant by encouraging promptness in instituting a claim, suppressing stale or fraudulent claims, and avoiding inconvenience." *Id.* ¶ 16 (omission, internal quotation marks, and citation omitted). The statute "should

12

reflect a policy decision regarding what constitutes an adequate period of time for a person of ordinary diligence to pursue his claim." *Id.* (internal quotation marks and citation omitted). If NMREC can control the triggering event for the statute of limitations by deciding when to open an email and initially review a complaint, then the board's opportunity to pursue the claim, and the licensee's ability to defend the claim, are substantially impaired. Thus, NMREC's proposition is untenable.

{19}     Instead, we hold that in cases subject to the ULA, when a party facing disciplinary action proves that an email was delivered on a specific date, *see Little v. Baigas*, 2017-NMCA-027, ¶ 32, 390 P.3d 201 (recognizing that "[t]he statute of limitations is an affirmative defense"), we presume that the board became aware or should have become aware of its contents on the date of delivery. *See Ball v. Kotter*, 723 F.3d 813, 830 (7th Cir. 2013) (presuming that letters and emails were properly received and read). However, the board may rebut that presumption by showing that the delay in opening the email was reasonable under the circumstances. Applying our holding to these facts, we conclude that NMREC, in the exercise of reasonable diligence and without any evidence to the contrary, should have discovered the complaint on July 2, 2014, when the email was sent. Thus, NMREC was time-barred from bringing the action against Petitioners. We explain.

{20}     The transcripts of NMREC's hearing, exhibits submitted to NMREC and the district court, together with general stipulations by the parties, establish four

13

undisputed facts: (1) on July 2, 2014, an NMREC investigator received an email setting forth Ms. Donham's complaints against Petitioners from the NMAG; (2) on July 10, 2014, the NMREC investigator opened the email and read its contents; (3) NMREC did not provide any reason or justification for not opening the email until July 10, 2014; and (4) on July 8, 2016, NMREC issued an NCA against Petitioners.

{21}   Importantly, NMREC gave no reasons to justify why the email was not opened until July 10, 2014. In fact, NMREC conceded that it did not offer any reason to justify this delay. The only testimony offered by NMREC on this point is that of the investigator who received the email and subsequently opened it. She stated, "I opened it up, printed it, reviewed it, made my handwritten notations, and then I carried it to the front desk and stamped it in." While this testimony establishes what was done with the information in the email once it was opened, it does not provide any explanation or justification for the delay in opening the email. Consequently, without any evidence showing that the delay was reasonable under the circumstances, we presume that NMREC should have known of the email's contents once the email was received on July 2, 2014.

{22}   NMREC's remaining arguments are unpersuasive. First, NMREC blames the NMAG for the delay in issuing the NCA. NMREC argues that because the NMAG prepared the NCA and sent it to NMREC for issuance, it has no control over when the NCA is issued. It states that this is because it does not control how long the

NMAG will take to prepare and send an NCA to it for issuance. We disagree. NMREC has two years to bring a disciplinary action under the ULA. It is undoubtedly aware of this limitation. If the NMAG is taking an extraordinarily long time to prepare the NCA, NMREC can take whatever action it deems necessary to have the NCA issued within the time limits of the ULA.

{23} Second, NMREC argues that it exercised ordinary diligence to comply with Section 61-1-3.1(A) when it established internal policies and procedures for submitting complaints to the NMREC. However, the only evidence in the record was that the NMREC investigator received complaints directly from the NMAG on occasion, and had the complaint been received by mail, she would not have been the one initially to receive the complaint. These facts do not address whether the delay in opening the email was reasonable under the circumstances. NMREC's remaining contentions regarding the NMREC's internal procedures are merely arguments of counsel, not evidence,[5] and we therefore decline to rely on them. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence.").

---

[5]In its answer brief, NMREC explains its internal procedures for receiving complaints and equates it to similar procedures, pursuant to the Inspection of Public Records Act (IPRA). NMREC, however, provides no citations to the record where this evidence was established.

{24} All told, NMREC tendered no evidence explaining why NMREC, exercising reasonable diligence, took so long to discover the contents of the email of July 2, 2014. Consequently, we presume that had NMREC exercised reasonable diligence in this instance, as it is obligated to do under the discovery rule, it would have discovered the complaint against Petitioners in the email sent on July 2, 2014, before July 8, 2014, and would have issued the NCA within the time limits of the ULA. Accordingly, NMREC's action against Petitioners was outside the applicable statute of limitations and is, therefore, barred. As a result, we reverse the district court's judgment in favor of NMREC and vacate the actions against Petitioners as barred by the statute of limitations.

**CONCLUSION**

{25} For the reasons stated above, we reverse and vacate.

{26} **IT IS SO ORDERED.**

_____

**GERALD E. BACA, Judge**

**WE CONCUR:**

_____

**J. MILES HANISEE, Chief Judge**

_____

**ZACHARY A. IVES, Judge**

16