2004-NMCA-028

86 P.3d 605

**Ronald Dale BROWN and Lisa Callaway Brown, Plaintiffs–Appellants,**

v.

**BEHLES & DAVIS, Attorneys at Law, William F. Davis, Daniel J. Behles, and Victoria A. Holt, Defendants–Appellees.**

**No. 22,938.**

Court of Appeals of New Mexico.

Jan. 14, 2004.

James K. Gilman, Clara Ann Bowler, Albuquerque, NM, for Appellants.

Gail Gottlieb, Christopher A. Holland, Sutin, Thayer & Browne, P.C., William F. Davis, pro se, Daniel J. Behles, pro se, Albuquerque, NM, for Appellees.

## OPINION

FRY, Judge.

{1} Plaintiffs Ronald Dale Brown and Lisa Callaway Brown appeal the district court's dismissal of their complaint on the ground that the four-year statute of limitations contained in NMSA 1978, § 37–1–4 (1953), bars

the Browns' legal malpractice claims. On appeal, the Browns argue that the district court erred in concluding as a matter of law that they knew or should have known within the statutory period that Defendants Behles & Davis, William F. Davis, Daniel J. Behles, and Victoria Holt (Attorneys) failed to avoid liens on the Browns' residential property in the course of the Browns' bankruptcy. In addition, the Browns argue that the district court erred in concluding that they were actually injured upon their discharge in bankruptcy. Because we conclude that the Browns presented an issue of fact, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} In 1985, the Browns retained Attorneys, who are bankruptcy lawyers, to assist them in resolving the financial problems of Flamingo Pools, the Browns' unincorporated business. A number of liens were recorded against the Browns' personal residence during 1985 and 1986. Attorneys advised the Browns to file a Chapter 7 bankruptcy and assured them that all the judgment liens would be avoided or forgiven through the bankruptcy process. The Browns agreed to Attorneys' representation, and on February 3, 1986, Attorneys filed bankruptcy on the Browns' behalf. On November 28, 1986, the Browns were granted discharge from debt by the bankruptcy court.

{3} In June 1997, the Browns attempted to refinance the mortgage on their home and discovered that a number of liens remained on the title to the residence, including one recorded by Attorneys for work done in the bankruptcy proceedings. The Browns contacted Attorneys, who released the bankruptcy files to the Browns but declined to assist the Browns further. As a result of the liens creating a cloud on the Browns' title, the Browns' refinancing did not close.

{4} Upon retaining new counsel in 1997, the Browns discovered that the bankruptcy had not avoided the liens even though the liens had been subject to avoidance in the bankruptcy proceeding under 11 U.S.C. § 522(f) (2000) because the original amount owing on the liens was less than the homestead exemption claimed by the Browns in the bankruptcy. In August 1997 the Browns successfully reopened the bankruptcy case, increased their available homestead exemption, and through the bankruptcy court avoided the remaining liens.

{5} One of the lien creditors, Albuquerque Chemical Company, unsuccessfully appealed the bankruptcy court's order to the federal district court, then appealed again to the Tenth Circuit Court of Appeals. In November 1999 the Tenth Circuit Court of Appeals affirmed the reopening of the case, but reversed the avoidance of Albuquerque Chemical Company's lien. Thereafter, the Browns paid Albuquerque Chemical Company and Attorneys on the liens and completed the refinancing on their home.

{6} On June 22, 2001, the Browns filed suit against Attorneys for legal malpractice and breach of contract arising from the 1986 representation in the bankruptcy proceedings. Among many affirmative defenses, Attorneys asserted that the four-year statute of limitations had run on the Browns' legal malpractice claim, arguing that under *Sharts v. Natelson*, 118 N.M. 721, 885 P.2d 642 (1994), the Browns' actual injury had occurred and the facts necessary to assert their malpractice claim were discoverable prior to June 1997. Granting Attorneys' motion to dismiss, the district court concluded that the Browns knew or should have discovered that the liens had not been avoided within four years of their discharge from bankruptcy, which the court determined was the date of the actual injury. Reasoning in the alternative, the district court found two grounds for dismissal as a matter of law: either (1) the Browns were charged with a duty as landowners to be aware of the status of publicly recorded documents affecting their title to real estate; or (2) the Browns were on constructive notice of publicly recorded documents, including the liens, by operation of NMSA 1978, § 14–9–2 (1953).

## DISCUSSION

{7} Because the district court considered affidavits and exhibits submitted by the parties, the motion to dismiss is treated as one for summary judgment. *See* Rule 1–012(B) NMRA 2003; *Knippel v. N. Communica-*

*tions, Inc.,* 97 N.M. 401, 402, 640 P.2d 507, 508 (Ct.App.1982). An appeal from a grant of summary judgment presents a question of law that we review de novo. *Bartlett v. Mirabal,* 2000–NMCA–036, ¶ 4, 128 N.M. 830, 999 P.2d 1062. We review the record in the light most favorable to the non-movant to determine whether there are genuine issues of material fact. *Handmaker v. Henney,* 1999–NMSC–043, ¶ 18, 128 N.M. 328, 992 P.2d 879. We determine whether "from the facts presented, [only] one reasonable conclusion can be drawn, ... [or] if a fair minded factfinder ... could return a verdict for [the non-movant]." *Goradia v. Hahn Co.,* 111 N.M. 779, 782, 810 P.2d 798, 801 (1991) (internal quotation marks and citations omitted).

*Statute of Limitations on Legal Malpractice Claims*

{8} The four-year limitation on filing a complaint alleging legal malpractice "commences when (1) the client sustains actual injury and (2) the client discovers, or through reasonable diligence should discover, the facts essential to the cause of action." *Sharts,* 118 N.M. at 724, 885 P.2d at 645 (footnote omitted); § 37–1–4. The statute does not begin to run until the client both sustains injury and discovers or should discover the facts underlying the cause of action. *Sharts,* 118 N.M. at 725, 885 P.2d at 646, n. 2; *see also Wiste v. Neff & Co., CPA,* 1998–NMCA–165, ¶ 8, 126 N.M. 232, 967 P.2d 1172 (stating that "each prong must be met individually").

**Actual Injury**

{9} A party sustains actual injury when the alleged malpractice "results in the loss of a right, remedy, or interest, or in the imposition of a liability." *Sharts,* 118 N.M. at 725, 885 P.2d at 646 (internal quotation marks and citation omitted). The Browns argue that they sustained actual injury in 1999, when the Tenth Circuit Court of Appeals reversed the avoidance of the Browns' liens. The Browns reason that they attempted to mitigate the damage caused by Attorneys' alleged negligence to avoid any injury, and thus, the Browns were not actually injured until their efforts proved unsuccessful. Attorneys argue that the district court correctly concluded that the Browns sustained alleged actual injury in 1986, when they received their discharge in bankruptcy and the judgment liens had not been avoided.

{10} *Sharts* convinces us that the Browns' actual injury was the failure of Attorneys to avoid the liens upon the Browns' discharge in bankruptcy in 1986. In *Sharts,* the plaintiff sued for legal malpractice after his attorney prepared and filed deeds with restrictive covenants that limited development of the land to single-family residences and frustrated the owner's desire to subdivide. *Sharts,* 118 N.M. at 723, 885 P.2d at 644. In that case, the Supreme Court held that the plaintiff sustained actual injury when he sold land with deeds containing restrictive covenants precluding the subdivision of the land. *Id.* at 725, 885 P.2d at 646. Reversing this Court's conclusion that actual injury could not be sustained until the plaintiff's rights were adjudicated in the declaratory judgment action the plaintiff filed, the Supreme Court reasoned that the actual injury occurred when the plaintiff lost a right or interest—the right to subdivide the land. *Id.* at 723, 725, 885 P.2d at 644, 646. As a result, our case law fixes the time of actual injury when an attorney's acts or omissions result "in the loss of a right, remedy, or interest, or in the imposition of a liability ... regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred." *Id.* at 725, 885 P.2d at 646 (internal quotation marks and citation omitted).

{11} Applying *Sharts* to the case at hand, the Browns lost the right to avoid liens on their property through the bankruptcy proceeding when they were discharged in bankruptcy, regardless of whether the case could be reopened and the liens avoided in a subsequent proceeding. Accordingly, we hold that the Browns sustained actual injury in 1986 at the time of their discharge.

**The Discovery Rule**

{12} The occurrence of actual injury is only one prong of the *Sharts* test. The Browns' legal malpractice claim did not ac-

crue until they discovered, or through reasonable diligence should have discovered, the facts essential to their claim. Generally, this determination raises a factual issue. *See id.* at 726, 885 P.2d at 656; *Brunacini v. Kavanagh*, 117 N.M. 122, 127, 869 P.2d 821, 826 (Ct.App.1993). The district court concluded that as a matter of law the Browns should have discovered Attorneys' alleged malpractice at the time the Browns sustained their actual injury, upon discharge in bankruptcy. In so holding, the district court relied on alternative grounds to dismiss the case. First, the district court reasoned that because landowners are under the obligation to be aware of the status of their title, upon their discharge in bankruptcy the Browns were charged with knowledge of the liens. Alternatively, the court relied on the recording statutes, NMSA 1978, §§ 14–9–1 to –3 (1886–87, as amended through 1991), which provide that all documents affecting title to real property recorded in the county records are constructive notice to the world of their existence from the time of recordation. Consequently, the court reasoned, the Browns were on constructive notice of the liens since their discharge in bankruptcy.

■ {13} We are not aware of any principle of law imposing on landowners a duty to be cognizant of the status of their title at all times, nor do we wish to create or imply such a duty that could render titleholders unpredictably vulnerable to claimants. *Cf. Mosley v. Magnolia Petroleum Co.*, 45 N.M. 230, 246–47, 114 P.2d 740, 751 (1941) (recognizing the dangers of imposing on landowners a duty to protect the public from hidden defects in their titles). In the context of this case, it is particularly unreasonable to expect the Browns, by virtue of being landowners, to make themselves aware that the liens had not been avoided after they hired Attorneys to do just that through bankruptcy. Given the complex nature of bankruptcy proceedings, by concluding that this affirmative duty charges the Browns with the discovery of their cause of action, the district court might also effectively require the Browns to hire additional counsel to investigate the existence of any possible errors in the Browns' bankruptcy discharge. Imposing such obligations on claimants is contrary to our pro-

fessional malpractice law, which recognizes that a plaintiff may not always be qualified to ascertain an injury or the source of an injury; for example, the law does not require a patient to seek a second medical opinion in order to discover whether the first doctor made mistakes. *See, e.g., Roberts v. S.W. Cmty. Health Servs.*, 114 N.M. 248, 256, 837 P.2d 442, 450 (1992). Indeed, our professional negligence law is intended to foster the trust and confidence a client places in a professional. *Id.* (stating "it is the duty of the law to protect the client from the negligent acts of the professional person"). Thus, instead of harboring a blanket expectation that plaintiffs will seek review of a professional's work, the fact finder determines when claimants could reasonably be expected to know of a possible tort. *Id.* For these reasons, we conclude that the Browns were not burdened with a duty to be aware of the liens on their title, solely because they are landowners. As a result, we hold that the Browns' claim could not accrue on these grounds as a matter of law.

■ {14} We turn now to the district court's alternative basis for dismissal, that the Browns were charged with constructive notice of the liens pursuant to the recording statutes. Sections 14–9–1 to –3 impute notice to the world of all instruments recorded with the county from the time of recordation. Attorneys argue that the constructive notice statute imputes to the Browns notice of the liens; therefore, the law presumes that the Browns should have discovered, through a reasonably diligent investigation, that the liens remained in effect, despite Attorneys' assurance that the liens would be avoided. We disagree. Not only would Attorneys' argument make the discovery rule redundant, it would also require the Browns to immediately hire additional counsel to investigate the bankruptcy proceedings to discover any possible malpractice claims, without an objective reason to do so. As we stated above, our professional malpractice law does not charge a layperson with the knowledge of a professional and does not foster such distrust of our legal profession. *See Roberts,* 114 N.M. at 256, 837 P.2d at 450.

{15} In addition, our Supreme Court has rejected Attorneys' construction of the recording statutes and has limited those to whom constructive notice is imputed. *Romero v. Sanchez,* 83 N.M. 358, 361, 492 P.2d 140, 143 (1971). In *Romero,* the Court followed the case law of jurisdictions that hold "the recording of a deed must be accompanied by other circumstances sufficient to put a reasonable person upon inquiry," limiting the effect of the record "only to those who are bound to search for it." *Id.* at 361, 492 P.2d at 143 (internal quotation marks and citation omitted); *see also Angle v. Slayton,* 102 N.M. 521, 523, 697 P.2d 940, 942 (1985). Whether a reasonably prudent person exercising ordinary diligence under the facts and circumstances of this case would have investigated the records within the limitations period is a factual question that cannot be decided as a matter of law. *Romero,* 83 N.M. at 362, 492 P.2d at 144.

{16} Additionally, this is not a simple case of recording a deed; here, the liens were recorded prior to bankruptcy and remained a cloud on the Browns' title after their discharge in bankruptcy. Thus, instead of an action or occurrence that might alert the Browns to the existence of the liens, there was merely Attorneys' omission in the bankruptcy proceedings in failing to rid the Browns' title of the liens. *See Romero,* 83 N.M. at 361–62, 492 P.2d at 143–44 (noting that recording statutes are intended to impute notice to those having subsequent dealings with the property at issue).

{17} Further, even if the recording statutes do impute inquiry notice to the Browns under these circumstances, a factual issue remains unresolved: whether a search of the records would reveal Attorneys' failure to avoid the liens in bankruptcy court. With their motion for reconsideration, the Browns submitted the affidavit of William Wooten, a title examiner, who attested that an inspection of the title record would not have revealed whether the judgment liens were avoided by a bankruptcy proceeding. He further stated that only a review of the Browns' file in bankruptcy court would have disclosed the status of the liens.

{18} Attorneys argue that the title examiner's affidavit was incompetent evidence, and thus could not be used to create a factual issue to defeat summary judgment. In support, Attorneys refer us to *State Bar v. Guardian Abstract & Title Co.,* 91 N.M. 434, 440, 575 P.2d 943, 949 (1978), arguing that the title examiner exceeded his expertise and engaged in the unauthorized practice of law by attesting to the legal effect of documents related to real property. We disagree with Attorneys' characterization of the purpose of the title examiner's statements. The purpose of Wooten's affidavit was to impart expert knowledge of the likely results of a record search for liens not avoided through bankruptcy proceedings. *Cf. State v. Litteral,* 110 N.M. 138, 141, 793 P.2d 268, 271 (1990) (stating that "[e]vidence inadmissible for one purpose may be admissible for other purposes under a different rule of evidence"). This knowledge is well within the expertise of a title examiner. Thus, the affidavit was competent evidence that created a factual dispute as to whether the Browns would have discovered that the liens on their property had not been avoided even if, in the exercise of reasonable diligence, the Browns were expected to search the county records. This factual issue precluded summary judgment dismissing the Browns' claims.

**CONCLUSION**

{19} For the foregoing reasons, we reverse the district court's order dismissing the Browns' complaint and remand with instructions to reinstate the Browns' claims.

{20} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and RODERICK T. KENNEDY, Judges.