# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-034**

**Filing Date: May 4, 2021**

**No. A-1-CA-37168**

**SANDRA DAY-PECK and ALEXANDER R. DAY,**

      Plaintiffs-Appellants,

v.

**SANDRA MORGAN LITTLE, Individually,
and LITTLE & GILLMAN-TEPPER, P.A.;
ROBERT H. JACOBVITZ, Individually;
and JACOBVITZ, THUMA & WALKER P.C,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
C. Shannon Bacon, District Judge**

Released for Publication August 31, 2021.

Steven K. Sanders & Associates, LLC
Steven K. Sanders
Albuquerque, NM

Queener Law Firm
Richard L. Queener
Clovis, NM

for Appellants

Brant & Hunt, Attorneys
John M. Brant
Jeannie Hunt
Albuquerque, NM

for Appellees Robert H. Jacobvitz and Jacobvitz, Thuma & Walker, P.C.

Dixon Scholl Carillo, PA
Briggs Cheney
Albuquerque, NM

for Appellees Sandra Morgan Little and Little & Gilman-Tepper, P.A.

**OPINION**

**YOHALEM, Judge.**

**{1}** This is an appeal from the district court's grant of summary judgment dismissing this legal malpractice action as barred by the statute of limitations. This lawsuit was filed on December 3, 2014, by Plaintiff Sandra Day-Peck (Day-Peck) on her own behalf, on behalf of her adult son Alexander Day (Alexander), and on behalf of her two minor children, J.D. and M.D. (Alexander, J.D., and M.D. collectively referred to as Children) (Day-Peck and Children collectively referred to as Plaintiffs).[1] The complaint alleged legal malpractice, negligent misrepresentation, fraud, breach of fiduciary duty, breach of contract, and conspiracy to commit fraud against defendant attorneys and law firms.[2] (collectively, Attorneys) in their representation of Day-Peck and Children in the settlement of claims to the proceeds of two policies—a $5 million policy and a $500,000 policy—insuring the life of Mark Day, Day-Peck's former husband and Children's father. Attorneys represented Day-Peck and Children in four interrelated proceedings: a divorce, in which the division of property and child support remained unresolved at the time of Day's death; the probate of the Day estate; Day-Peck's Chapter 7 bankruptcy; and a federal court interpleader action to distribute the benefits of the $500,000 policy. With the exception of Attorney Johnstone, who was a court-appointed guardian ad litem for Children, Attorneys represented both Day-Peck and Children in the settlement of these four proceedings. The settlements resolving these cases were agreed to by Day-Peck and approved by the various courts in 2008. As noted above, this case was not filed until December, 2014, more than six years after approval of the settlement agreements.

**{2}** Day-Peck claims on appeal (1) the district court abused its discretion in disqualifying her chosen counsel based on a conflict of interest created by counsel's representation of both Day-Peck and Children; (2) the district court abused its discretion in denying her motion for an extension of time to file a factual response to Attorneys' summary judgment motions on the statute of limitations; (3) the district court erred in holding that there were no genuine issues of material fact as to the time of accrual of Day-Peck's malpractice action; and (4) the district court abused its discretion in awarding Attorneys the costs they incurred to recover documents from Day-Peck's hard drive and in allocating costs to Day-Peck, rather than dividing them among Day-Peck and Children. Finding no error, we affirm.

---

1This appeal was filed by Day-Peck and Alexander. Although Alexander has separate counsel on appeal, he provides no argument on his own behalf, but simply joins Day-Peck's brief. For the sake of simplicity, we therefore refer to Day-Peck as the appellant. The claims of the two minor children, J.D. and M.D., were reinstated by the district court and are not at issue in this appeal.

2Defendants were Attorney Sandra Morgan Little and Little & Gillman-Tepper, P.A.; Attorney John N. Lieuwen and Lieuwen, La Fata & Tucker P.A.; Attorney Robert H. Jacobvitz and Jacobvitz, Thuma & Walker PC; The Estate of Peter H. Johnstone, PC; and Attorney Martin E. Threet and Martin E. Threet & Associates. The Estate of Peter Johnstone, PC; Attorney John N. Lieuwen and Lieuwen, La Fata & Tucker P.A.; and Attorney Martin E. Threet and Martin E. Threet & Associates have been dismissed and are not appellees in this Court.

**BACKGROUND**

**{3}** The merits of Day-Peck's malpractice claim are not before this Court on appeal. A brief review of the nature of the proceedings in which Attorneys represented Day-Peck and Children, however, is useful in understanding the issues on appeal.

**{4}** Day-Peck filed her original complaint for malpractice, negligent misrepresentation, breach of fiduciary duty, breach of contract, fraud, and conspiracy to commit fraud, against Attorneys on December 3, 2014. Day-Peck's claims arose out of settlement agreements entered into in 2008, more than six years earlier, addressing the proceeds of two policies insuring the life of Day, Day-Peck's deceased ex-husband and Children's father. One of the policies paid a $5 million death benefit, the other a $500,000 death benefit. Day took his own life in 2006, shortly after he and Day-Peck were divorced.

**{5}** In this attorney malpractice action, Day-Peck claims that Attorneys conspired to conceal from her the fact that New Mexico, by statute, NMSA 1978, § 42-10-3 (1937) and NMSA 1978, § 42-10-5 (1889), exempts life insurance benefits from both creditors of the insured and creditors of the beneficiary of the policy. Section 42-10-3 states, in relevant part, as follows:

> [P]ayments of every kind from any life, accident or health insurance policy . . . issued upon the life of a citizen or resident of the state of New Mexico . . . shall in no case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or who is protected by said contract, or who receives or is to receive the benefit thereof, nor shall it be subject in any other manner to the debts of the person whose life is so insured, or who is protected by said contract or who receives or is to receive the benefit thereof[.]

Section 42-10-5 provides, "The proceeds of any life insurance are not subject to the debts of the deceased, except by special contract or arrangement, to be made in writing." Day-Peck alleges in her original and amended complaint, inconsistently, that she was entitled to the full $5 million proceeds "as the sole beneficiary," and Day-Peck and Children were each separately entitled to the full $5 million. Day-Peck's pleadings also seek to dissolve the trust created for Children's benefit with the proceeds of the 2008 settlement agreements.

**{6}** Day-Peck's and Children's conflicting claims to the $5 million life insurance benefits arose, in part, out of ambiguity in the partial divorce decree entered by the domestic relations court prior to Day's death. The decree required Day to "maintain life insurance of $5 million with [Day-Peck] *or* [C]hildren listed as beneficiaries until he is no longer obligated for child support." (Emphasis added.) The divorce decree failed to specify whether the court intended the beneficiary of the $5 million policy to be Children or Day-Peck. The decree also did not state whether the beneficiary would be entitled to

the full amount of the policy, or only the amount the court determines is necessary for child support over Children's minority, with the remainder returning to Day or his estate.

**{7}** Following Day's death, his creditors filed a probate proceeding and intervened in the pending divorce proceeding, contending in both courts that Day-Peck and Children's claim to the $5 million policy was limited to the amount necessary for child support and that creditors were entitled to the remainder. Day-Peck filed a Chapter 7 bankruptcy proceeding in federal bankruptcy court to attempt to protect the $5 million in life insurance proceeds from creditors.

**{8}** The last proceeding at issue in this malpractice case addressed the $500,000 life insurance policy. Shortly before his death, Day made two conflicting changes to the $500,000 life insurance policy: he first changed the beneficiary from Day-Peck to Children, and then from Children to Day's friend, Deborah Shamaley. The insurance carrier filed an interpleader action in federal district court so the court could determine who was entitled to payment of the benefits.

**{9}** In 2008 Day-Peck and Children, represented by Attorneys, entered into two settlement agreements with Day's creditors resolving the claims made by all parties in the proceedings described above. A settlement agreement pertaining to the $5 million life insurance proceeds was executed by Day-Peck and creditors on or about May 2, 2008, and approved by the bankruptcy court on July 23, 2008. That agreement gave Day-Peck $2.75 million of the $5 million life insurance benefits. The $2.75 million, plus interest, was placed in a trust for Children's benefit. The creditors received the remainder of the $5 million. The probate court approved this same settlement on August 5, 2008. The second settlement agreement resolved the interpleader action on the $500,000 life insurance policy. An agreement was reached in mediation on March 27, 2008, and was approved by the federal court on September 8, 2008. Day-Peck, on behalf of Children, agreed to split the proceeds of the $500,000 policy equally with Shamaley. The $250,000 plus interest, was placed in Children's trust.

**{10}** Day-Peck claims that, but for Attorneys' negligence and their conspiracy to keep from her knowledge of the New Mexico statutes exempting life insurance proceeds from creditors, neither Day-Peck nor Children would have entered into the 2008 settlement agreements. Day-Peck claims that if she and Children had not settled, they would have received the full $5,500,000 in life insurance benefits.

**{11}** Day-Peck does not dispute that the statute of limitations for legal malpractice is four years in New Mexico, *see* NMSA 1978, § 37-1-4 (1880), or that the date of her loss due to the alleged malpractice was September 8, 2008, at the latest, when the last settlement agreement was approved by a court. Nor does she dispute that her complaint was filed until more than six years after the last settlement agreement. Day-Peck claims that her cause of action for malpractice did not accrue, and the statute of limitations did not begin to run, until 2013, when an independent lawyer (who later filed this malpractice suit on her behalf) reviewed thousands of pages of Attorneys' files and advised her "in a manner she could understand" that he believed there had been

malpractice. Day-Peck also alleges in her complaint that Attorneys fraudulently concealed the existence and import of the New Mexico statutes exempting life insurance benefits from creditors' claims, and that this fraudulent concealment tolled the statute of limitations, pursuant to NMSA 1978, Section 37-1-7 (1880), until she discovered the fraud in 2013. *See id.* (providing that, in actions for fraud or mistake, "the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved").

**{12}** Additional facts and proceedings will be explored as necessary in our discussion of each issue.

## DISCUSSION

### I.     The District Court Did Not Abuse Its Discretion in Disqualifying Plaintiffs' Counsel

**{13}** Day-Peck appeals from the district court's decision granting Attorneys' motion[3] to disqualify Plaintiffs' former counsel, Richard S. Mackenzie and Lamar D. Treadwell, from representing either Day-Peck or Children in this action. Attorneys' motion alleged that Day-Peck and Children "have conflicting claims to the same $5 million in life insurance proceeds as damages in this lawsuit[,]" and that Day-Peck's claim to the $2.75 million paid into Children's trust is directly adverse to Children's interests. The district court agreed with Attorneys' claim that Plaintiffs' counsel were concurrently representing clients with directly adverse interests. The court held that disqualification of Plaintiffs' counsel was required as a matter of law by the New Mexico Rules of Professional Conduct, Rules 16-107 and 16-109 NMRA. By its order of April 14, 2017, the district court disqualified Mackenzie and Treadwell from representing any of the plaintiffs in this action.

**{14}** The district court denied Plaintiffs' counsel's request to continue to represent just Day-Peck or just Children finding that, by the time counsel were disqualified, more than two years after the complaint was filed, they were privy to adverse confidential information from both Day-Peck and Children and could not avoid violating Rule 16-109(A) and (C) regarding maintaining the confidentiality of a former client.

**{15}** Day-Peck argues on appeal that, assuming there was a conflict of interest that violated the Rules of Professional Conduct, which was non-waivable and required disqualification, the district court nonetheless abused its discretion in granting Attorneys' motion to disqualify because (1) disqualification of Plaintiffs' counsel in the third year of complex litigation is barred by equitable considerations; (2) Day-Peck's last-minute agreement to waive her claim to Children's $2.75 million trust fund resolves any conflict; (3) appointment of a guardian ad litem for the minor Children to review the fairness of

---

3In the district court, several motions were filed on disqualification, with each Attorney joining some or all of the motions. Because Attorneys have filed a joint brief on appeal focusing on arguments pursued jointly by Attorneys in the district court, we refer to the arguments in the district court pleadings on disqualification of counsel as if they were incorporated into a single motion.

any settlement or verdict would be sufficient to address the conflict; (4) Attorneys are not clients or former clients of Mackenzie or Treadwell, and therefore, lack standing to disqualify them. Finding no error, we affirm the decision of the district court disqualifying counsel from representing Plaintiffs.

## A.      Standard of Review

{16}    "A ruling on a motion to disqualify [counsel] is generally reviewed for an abuse of discretion." *Roy D. Mercer, LLC v. Reynolds*, 2013-NMSC-002, ¶ 13, 292 P.3d 466. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. When reviewing a district court decision based on historical facts, we recognize that "the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses." *State v. Vandenberg*, 2003-NMSC-030, ¶ 18, 134 N.M. 566, 81 P.3d 19 (internal quotation marks and citation omitted). Therefore, "we will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder." *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 28, 146 N.M. 473, 212 P.3d 361 (internal quotation marks and citation omitted). Even when we review for an abuse of discretion, we review both questions of law and the application of the law to the facts de novo. *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450.

## B.      The District Court Correctly Concluded That Disqualification of Plaintiffs' Counsel Was Required as a Matter of Law and That Laches Did Not Apply

{17}    Day-Peck alleges on appeal that Attorneys acted inequitably by purposely delaying the filing of their motion to disqualify Plaintiffs' counsel for more than two years specifically to gain advantage in the litigation, and that, given this inequitable conduct, the motion to disqualify should have been denied as barred by equity. Day-Peck relies on our Supreme Court's opinion in *United Nuclear Corp. v. General Atomic Co.*, in which the Court stated that "a disqualification motion is of an equitable nature," and held that disqualification is not always justified by the equities, even if there has been a violation of the Rules of Professional Conduct. 1980-NMSC-094, ¶ 406, 96 N.M. 155, 629 P.2d 231.

{18}    Day-Peck's brief fails to acknowledge additional relevant Supreme Court precedent subsequent to *United Nuclear* that clarifies that, with the exception of extraordinary circumstances like those in *United Nuclear*, where laches may apply, the district court cannot rely on equitable considerations to override a violation of the Rules of Professional Conduct demanding disqualification of counsel. *Roy D. Mercer, LLC*, 2013-NMSC-002, ¶ 37. Our Supreme Court, in *Roy D. Mercer*, emphasized the extraordinary circumstances in *United Nuclear*, one of the largest and most complex cases ever litigated in New Mexico, circumstances it suggests were necessary to justify the application of laches. Our Supreme Court cautioned that "in no event should [*United Nuclear*] be read as somehow vesting our courts with the equitable power to ignore the clear mandate of our Rules of Professional Conduct." *Roy D. Mercer, LLC*, 2013-

NMSC-002, ¶ 37. Although acknowledging that judges "retain some discretion in ruling on motions to disqualify[,]" the Court held that "the judge's equitable discretion cannot trump the plain language of a rule, especially when that rule concerns the duty of loyalty." *Id.* ¶ 39.

**{19}** In this appeal, Day-Peck has not challenged either the district court's ruling that counsel's joint representation of Day-Peck and Children violated mandatory Rules of Professional Conduct requiring disqualification or that their counsel's violations related directly to the important duty of loyalty to a client. They instead argue that this case is one of the rare cases, like *United Nuclear*, where laches should have been applied. They claim that the district court abused its discretion when it failed to hold that that counsel should not be disqualified so late in a complex case and blamed Attorneys' litigation strategy for the delay.

**{20}** Although the district court correctly concluded that it was not free to weigh the equities when there was such a clear violation of the Rules of Professional Conduct, the court nonetheless addressed Plaintiffs' claim that Attorneys, by delaying for strategic advantage, were barred by laches from seeking to disqualify Plaintiffs' counsel. The district court rejected Plaintiffs' laches argument, finding that Attorneys had expressed concern about the conflict early in the litigation, that the court had appointed a guardian ad litem to help the court determine if there was a conflict, and that it was the failure of Plaintiffs' counsel to respond to the legitimate concerns of Attorneys and the court which was to blame for the delay.

**{21}** Although Day-Peck's brief on appeal purports to challenge the district court's finding placing responsibility on Plaintiffs and rejecting Plaintiffs' claim that this was a defense litigation strategy, Day-Peck's brief fails to review the evidence in the record. We, therefore, will not consider further her challenge to the district court's findings supporting the court's decision that laches does not apply. *See Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶ 15, 115 N.M. 181, 848 P.2d 1108 ("[I]t is not the responsibility of the reviewing court to search through the record to determine whether substantial evidence exists to support a finding.").

**{22}** Day-Peck, having failed to show that the district court erred in holding that laches did not apply, we hold that the district court correctly applied New Mexico law governing disqualification of counsel when it relied exclusively on the New Mexico Rules of Professional Conduct and concluded that violation of those rules required disqualification as a matter of law. The district court, therefore, did not abuse its discretion in disqualifying Plaintiffs' former counsel.

## C. Day-Peck's Waiver of Her Claim to the Children's Trust Does Not Eliminate the Conflict

**{23}** Day-Peck next contends that her last-minute offer to waive her claim to Children's $2.75 million trust eliminates the conflict between her interests and Children's. Day-Peck, however, offers this Court no explanation of how this limited

waiver would eliminate the conflict of interest over recovery of the remaining $2.25 million in life insurance benefits sought as damages both by Day-Peck and Children in this malpractice action. We therefore do not consider this argument further. *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)).

## D.     Appointment of a Guardian Ad Litem After a Verdict or Settlement Would Not Resolve the Conflict

**{24}**     Day-Peck contends that the district court should have imposed some solution other than the complete disqualification of Plaintiffs' counsel. Day-Peck suggests that the appointment of a guardian ad litem for the minor Children, charged with dividing the proceeds after a settlement or judgment was entered, would sufficiently protect Children's interests. The district court disagreed, holding that the conflict tainted every aspect of the litigation and could not be resolved by anything short of disqualification.

**{25}**     We agree with the district court. This is a case where the claims and interests of the Plaintiffs in the litigation are in direct conflict and where that conflict cannot be cured by the advice of a guardian ad litem as to how to divide a settlement or judgment (assuming Plaintiffs prevail). Indeed, the conflict pervades this litigation. The district court relied on the advice of Plaintiffs' expert, Michael Hart, and the report of the court-appointed guardian ad litem, both of whom agreed that there was a conflict between Children's interests and Day-Peck's interests on the merits of the claims, and that Children would be best served by independent counsel to advise them and to pursue the litigation strategy best suited to their needs. Whether that independent counsel is identified as a guardian ad litem or an independent advocate, that person must act as an independent adviser and advocate of Children's interests throughout the litigation. As our Supreme Court noted in *Collins ex rel. Collins v. Tabet*, when children are active litigants in a case, they, like any other litigant, need "an advocate—someone who will plead [*their*] cause as forcefully as the attorneys for each competing . . . claimant plead theirs." 1991-NMSC-013, ¶ 33, 111 N.M. 391, 806 P.2d 40 (quoting *Veazey v. Veazey*, 560 P.2d 382, 390 (Alaska 1977), *superseded by statute on other grounds*, *Deivert v. Oseira*, 628 P.2d 575, 579 (Alaska 1981)). "The basic premise of the adversary system is that the best decision will be reached if each interested person has his case presented by counsel of unquestionably undivided loyalty." *Id.* (internal quotation marks and citation omitted).

**{26}**     The district court correctly decided that Children are entitled to counsel with undivided loyalty to them at every stage of the litigation.

## E.     Attorneys Had Standing to Move to Disqualify Plaintiffs' Former Counsel

**{27}**     Day-Peck next argues that Attorneys lacked standing to move to disqualify Plaintiffs' former counsel because Attorneys are not current or former clients of Mackenzie or Treadwell. Although this Court has held that "[g]enerally speaking, only a

current or former client has standing to move for disqualification of counsel based upon an alleged conflict of interest[,]" there is an important exception: when a nonclient's rights are prejudiced or injured by a conflict of interest, the nonclient has standing to move for disqualification. *N.M. State Inv. Council v. Weinstein*, 2016-NMCA-069, ¶ 93, 382 P.3d 923 (internal quotation marks and citation omitted).

**{28}** The district court held that Attorneys' interests were sufficiently adversely affected by the alleged conflict of interest to overcome the general rule that an attorney's violation of the Rules of Professional Conduct can only be raised by a client or former client. The court found that Plaintiffs' counsel's conflict "taint[ed] the entire proceeding" and could put in doubt any judgment or settlement, leading to more litigation. We agree that Attorneys' interest in a fair and final resolution of this controversy was adversely affected by Mackenzie and Treadwells' conflict of interest. Our Supreme Court has recognized that a conflict of interest that goes unremedied can require reversal and remand to redo the proceedings below. *See Living Cross Ambulance Serv., Inc. v. N.M. Pub. Regul. Comm'n*, 2014-NMSC-036, ¶¶ 22-23, 338 P.3d 1258 (reversing and remanding for a new trial based on the failure of the hearing officer to promptly disqualify counsel). The district court, therefore, correctly decided that Attorneys' right to have this controversy resolved completely and fairly was adversely affected by the conflict, giving them standing to move to disqualify Plaintiffs' counsel.

## II. The District Court Did Not Abuse Its Discretion in Refusing Day-Peck a Continuance to Respond to Attorneys' Summary Judgment Motions

**{29}** Day-Peck contends that the district court abused its discretion when it denied her January 4, 2018 motion for a continuance of the scheduled January 11, 2018 merits hearing, and for an extension of time to submit a written response to Attorneys' summary judgment motions. Day-Peck makes two arguments: (1) as a matter of law, she was entitled to additional time to respond because she had not been advised by a second, separate motion that Attorneys would seek a ruling on the merits without her response; and, alternatively, (2) the district court abused its discretion in refusing to grant her more time to respond based on her showing of excusable neglect.

**{30}** We do not address Day-Peck's argument that Attorneys were required as a matter of law to file a second motion prior to the January 11, 2018 hearing to give Day-Peck notice that the merits would be decided if she failed to respond. This argument was not made to the district court below, nor was a ruling invoked in the district court. "In order to properly preserve an issue, it must appear that the party fairly invoked a ruling of the district court on the same grounds argued in the appellate court." *Vill. of Angel Fire v. Bd. of Cnty. Comm'rs of Colfax Cnty.*, 2010-NMCA-038, ¶ 15, 148 N.M. 804, 242 P.3d 371 (alterations, internal quotation marks, and citation omitted). "We generally do not consider issues on appeal that are not preserved below." *State v. Cain*, 2019-NMCA-059, ¶ 28, 450 P.3d 452 (internal quotation marks and citation omitted), *cert. denied*, 2019-NMCERT-009 (No. S-1-SC-37826, Sept. 10, 2019).

**{31}** We proceed to review Day-Peck's alternative argument: that the district court abused its discretion when it held that her conduct throughout the litigation demonstrated "the opposite of excusable neglect" and proceeded to decide the summary judgment motions on their merits, without a factual response from Day-Peck. We conclude that the district court's findings of repeated, unjustified neglect by Day-Peck of her obligations as a plaintiff in this case, and specifically of her obligation to timely respond to Attorneys' motions for summary judgment, are supported by substantial evidence in the record. The district court's decision that Day-Peck's neglect was not excused by her efforts to find counsel after her original counsel were disqualified was a proper exercise of the court's discretion. *See Freeman v. Fairchild*, 2018-NMSC-023, ¶ 25, 416 P.3d 264 (holding that if a non-moving party requests a time extension, but fails to demonstrate excusable neglect, the district court "may rule on the uncontested motion for summary judgment by determining whether the moving party has made a prima facie showing under Rule 1-056 [NMRA]").

## A.   Standard of Review

**{32}** "We generally apply an abuse of discretion standard to determine whether the district court erred in denying an extension of time to file a response based on an absence of excusable neglect." *Freeman*, 2018-NMSC-023, ¶ 15 (alterations, internal quotation marks, and citation omitted). Although an abuse of discretion standard applies, "the nature of our review is affected by the nature of the order entered by the district court. Our review is more exacting when the order being reviewed grants some sort of final relief without consideration of the merits of a claim or defense." *Id.* (alterations, internal quotation marks, and citation omitted).

**{33}** "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363 (internal quotation marks and citation omitted). Under our abuse of discretion standard, we review a district court's findings of fact to determine whether they are "supported by substantial evidence[.]" *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318; *accord State v. Nehemiah G.*, 2018-NMCA-034, ¶ 65, 417 P.3d 1175 ("We do not reweigh the evidence and will not substitute our judgment for that of the district court." (alteration, internal quotation marks, and citation omitted)). Additionally, "we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *N.M. Right to Choose/NARAL*, 1999-NMSC-028, ¶ 7 (alteration, internal quotation marks, and citation omitted).

## B.   The Evidence in the Record Supports the District Court's Finding of Inexcusable Neglect

**{34}** Applying this standard of review, we conclude that the district court did not abuse its discretion in denying Day-Peck's motion to continue the hearing on the merits of Attorneys' summary judgment motions to allow Day-Peck more time to file a factual response to the motions. Substantial evidence in the record supports the district court's

conclusion that Day-Peck was given every opportunity to respond to the motions for summary judgment and that her neglect was not excusable.

**{35}**　Day-Peck's contention on appeal that the district court erred in finding her neglect inexcusable focuses exclusively on the effort to obtain new counsel Day-Peck claims to have made after disqualification of her former counsel on April 14, 2017. Day-Peck fails to bring to this Court's attention the detailed findings of the district court, which review the history of delay by Day-Peck in this case, in particular, Day-Peck's delay in responding to the summary judgment motions, both prior to and after the disqualification of her former counsel.

**{36}**　First, the court noted that the summary judgment motions addressed a preliminary issue in a case that had been pending for several years. Day-Peck's motion for a continuance was filed between eleven and fourteen months after Attorneys filed their summary judgment motions.

**{37}**　The district court found that, prior to the disqualification of Day-Peck's former counsel, there was already significant delay in responding to Attorneys' summary judgment motions, which the court attributed to Day-Peck's negligence. Prior counsel had five months between the filing of the summary judgment motions and their disqualification, a period which should have been sufficient to respond to the motions according to the court. Prior counsel filed no response.

**{38}**　When Plaintiffs' counsel was disqualified on April 14, 2017, the district court gave Day-Peck seventy days to find new counsel, fifty days more than Rule 1-089(B) NMRA generally allows. The court found that it had "never given this much time for somebody to secure counsel, ever." Yet Day-Peck failed to comply with the seventy-day time period ordered, neither retaining counsel, nor assuming the responsibilities of a pro se litigant, as the order required, when the seventy days expired.

**{39}**　The court found it had made clear to Day-Peck at the August 2, 2017 hearing, that the court would not tolerate further delay and that the case would be dismissed if no response to Attorneys' summary judgment motions was received. Day-Peck testified under oath at the August hearing that she had arrangements for counsel nearly finalized and suggested that her summary judgment response would soon be filed.

**{40}**　At the direction of the court at the August 2, 2017 hearing, Attorneys filed requests for hearing on the merits of their summary judgment motions. Following receipt of these requests for hearing, the court delayed scheduling the merits hearing until mid-October 2017 to give Day-Peck additional time to file her promised response. In mid-October, having received nothing from Day-Peck, the court scheduled the hearing for January 11, 2018, sending notice to all parties. The January 11, 2018 date gave Day-Peck two more months to file her summary judgment response. No response was filed.

**{41}**　After making these findings concerning the history of delay and neglect by Day-Peck of her obligation to respond to the summary judgment motions, the district court

addressed Day-Peck's central argument, the argument that she has renewed on appeal: that Day-Peck had made "a heroic effort," to find new counsel, contacting 140 attorneys, without success, and that this extraordinary effort excused her failure to respond. The court found Day-Peck's Rule 1-056(F) affidavit, which purported to document her efforts to find new counsel, both untimely and possibly perjured. Day-Peck's Rule 1-056(F) affidavit claimed that none of the 140 attorneys she claimed to have contacted would agree to represent her. The district court found that a hand-written chart Day-Peck had filed as an attachment to her motion for a continuance directly contradicted her affidavit. The chart shows that Day-Peck had turned down several offers of representation. The chart also shows that the vast majority of the 140 requests for representation were by an e-mail blast.

**{42}**    Finally, the court found that any further delay would be prejudicial to Attorneys. The court noted that the events at issue had occurred nearly a decade before the January 2018 hearing, and the motions for summary judgment had been filed and ready for a response for a year. The court found that memories had faded, making the defense more difficult.

**{43}**    Under our abuse of discretion standard, we do not reweigh the evidence or substitute our judgment for that of the district court. *Nehemiah G.*, 2018-NMCA-034, ¶ 65. As noted above, Day-Peck's brief does not specifically challenge any of the court's findings concerning Day-Peck's conduct and the history of the case. We, therefore, accept them as conclusive. *See* Rule 12-318(A)(4) NMRA ("The argument shall set forth a specific attack on any finding, or the finding shall be deemed conclusive."). Even applying the more exacting standard of review mandated by *Freeman*, 2018-NMSC-023, ¶ 15, for review of the denial of an extension to respond to a dispositive motion, we find no abuse of discretion in the district court's decision that Day-Peck's failure to timely respond to Attorneys' motions for summary judgment was due to inexcusable neglect, or in the court's decision to proceed to reach the merits of the summary judgment motions without a factual response from Day-Peck. We also find no abuse of discretion in the district court's decision to strike Day-Peck's Rule 1-056(F) affidavit as untimely.

### III.    Attorneys Established a Prima Facie Case Sufficient to Support the Court's Grant of Summary Judgment

**{44}**    Day-Peck argues that conflicting inferences about when she first "knew" that she had been improperly advised by Attorneys, and, therefore, about the date her cause of action accrued, preclude summary judgment on the statute of limitations. She contends that "the client should not be held to know the nuances of the law," and that it was only in 2013, when independent counsel completed a review of thousands of pages from Attorneys' files in preparation for filing this malpractice suit and told her "in a manner

she could understand" that he believed there had been malpractice, that she truly knew that she had been improperly advised by Attorneys five years earlier.[4]

**{45}** Attorneys contend, in response, that there can be only one logical inference from the overwhelming evidence in the summary judgment record showing that (1) Day-Peck was advised of the life insurance exemption statutes (and sent the full text of the statutes prior to agreeing to the settlement agreements; and (2) Day-Peck began contacting attorneys to pursue a malpractice claim immediately after the settlement agreements were adopted in 2008. We agree that the unrebutted evidence in the summary judgment record raises no genuine issue of material fact as to when Day-Peck's claims accrued. The summary judgment record establishes that Day-Peck's claims accrued by January 2010, at the latest, as the district court held and that this action, filed well over four years later, is barred by the statute of limitations. *See* § 37-1-4 (establishing a four-year statute of limitations for legal malpractice claims). We therefore affirm the district court's grant of Attorneys' motions for summary judgment and the dismissal of Day-Peck's claims.

## A. Standard of Review

**{46}** We review a district court's grant of summary judgment de novo, applying the same standards applied by the district court. *See Farmington Police Officers Ass'n v. City of Farmington*, 2006-NMCA-077, ¶ 13, 139 N.M. 750, 137 P.3d 1204. Even when no response is filed to a motion for summary judgment, the district court, and this Court, must evaluate the statements of fact and the legal claims to determine whether the moving party has made the prima facie case of entitlement to summary judgment required by Rule 1-056(C). *See Freeman*, 2018-NMSC-023, ¶ 21. A prima facie case is defined as "a party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Yurcic v. City of Gallup*, 2013-NMCA-039, ¶ 29, 298 P.3d 500 (alteration, internal quotation marks, and citation omitted). "The burden on the movant does not require him to show or demonstrate beyond all possibility that no genuine issue of fact exists." *Goodman v. Brock*, 1972-NMSC-043, ¶ 9, 83 N.M. 789, 498 P.2d 676.

## B. Statute of Limitations for Legal Malpractice

**{47}** Under New Mexico law, the statute of limitations for legal malpractice begins to run when the client discovers, or should have discovered, "that he or she has suffered a loss and that the loss may have been caused by the attorney's wrongful act or omission." *Sharts v. Natelson*, 1994-NMSC-114, ¶ 10, 118 N.M. 721, 885 P.2d 642. Certainty that the attorney breached the duty of care is not required; it is enough for the client to know "there may have been serious errors" in the attorney's work which resulted in injury. *LaMure v. Peters*, 1996-NMCA-099, ¶ 22, 122 N.M. 367, 924 P.2d

---

[4]Although Day-Peck submitted no written response to Attorneys' motions for summary judgment, Attorney Sanders was permitted to participate in the January 11, 2018, hearing on the merits of the motions for summary judgment on her behalf. Day-Peck's argument on appeal was preserved by Mr. Sanders at that hearing.

1379. "[I]t is sufficient if [the] plaintiff is on notice of the facts constituting the cause of action." *Id.* ¶ 27.

**{48}** Day-Peck relies on our decision in *Brown v. Behles & Davis*, 2004-NMCA-028, 135 N.M. 180, 86 P.3d 605, to support her contention that, although the evidence in the summary judgment record establishes that she knew about the life insurance exemption statutes and the claims made by the creditors against the application of that exemption by 2009 at the latest, the evidence does not conclusively prove that she understood "the nuances of the law." She claims that, because she is a layperson, there is a reasonable inference that, like the plaintiff in *Brown*, she did not know that Attorneys' advice was erroneous until independent counsel reviewed thousands of pages of documents and explained to her, "in a way she could understand" that she should file a malpractice claim. *See id.* ¶ 13.

**{49}** *Brown* does not support Day-Peck's contention that a client has no obligation to seek an independent opinion from another attorney, no matter how aware they are of a serious error in prior counsel's work. Nor does *Brown* support Day-Peck's claim that a cause of action in malpractice does not accrue until the client is advised to file a malpractice action by independent counsel. *Brown* holds that a layperson is not charged with hiring another lawyer to investigate counsel's work when the client has no objective reason to question that work. *See id.* This Court refused in *Brown* to impose "a blanket expectation that plaintiffs will seek review of a professional's work[.]" *Id.* In *Brown*, the client had no reason to suspect that the work he had hired an attorney to do—to remove the lien from his home—had been left undone. *Id.* He discovered the truth only when he tried to refinance his home. *Id.* ¶¶ 2-3.

**{50}** This case is not analogous to *Brown*. The record establishes that Day-Peck knew even before she entered into the settlement agreements that "there may have been serious errors" in Attorneys' work. *See LaMure*, 1996-NMCA-099, ¶ 22. Day-Peck stated in her deposition that she believed Attorneys were advising her to give up life insurance proceeds which, by statute, were exempt from creditors when she left the settlement mediation in 2009. Unlike the plaintiff in *Brown*, Day-Peck had identified the very error by her Attorneys, and the very injury she complains of, in this action. The summary judgment record includes an e-mail from Day-Peck to Attorney Jacobvitz, sent on August 15, 2007, before the settlement was entered, telling him that she believed that the life insurance proceeds were exempt from creditors. Shortly thereafter, Day-Peck expressed to her father "real doubts as to whether [she was] being properly represented" and told him she "really felt constrained to do something to see if she was being represented correctly." It was around this time that Day-Peck retained Attorney Threet to advise her on the work of the other Attorneys. Apparently, Threet's advice did not reassure her. In her deposition, Day-Peck testified that, when she left the settlement mediation on May 1 or 2, 2008, "[she] knew it wasn't a good deal for [her]."

**{51}** Day-Peck not only suspected a problem when she walked out of the settlement mediation, she acted on her suspicion, consulting with two attorneys between 2008, when the settlement agreements were entered, and the end of the following year. Later

in 2013, she retained Mackenzie (the same attorney she first consulted about her suspicion of malpractice in October 2008, a month after the first settlement agreement was approved) to file a malpractice action on her behalf. In October 2008, Day-Peck sent Mackenzie nine e-mails with extensive documentation attached, including copies of the settlement agreements. Later, in 2009, still well within the statute of limitations, Day-Peck retained attorney Don Harris for assistance to gain control of the settlement funds that had been placed in trust for Children. Harris testified in his deposition that he reviewed the settlement agreement and the exemption statutes in 2009 and discussed his findings on the life insurance exemption with Day-Peck at the end of 2019 and the beginning of 2010.

**{52}** Unlike the plaintiff in *Brown*, then, who had no reason to suspect negligence by his attorney, 2004-NMCA-028, ¶ 13, Day-Peck was dissatisfied and suspected error in Attorneys' advice from the time she agreed to the settlements. Her dissatisfaction arose from the very facts alleged to constitute the malpractice complained of in this action: her belief that the life insurance proceeds were exempt from creditors and that Attorneys were improperly advising her to give up some of those insurance benefits to settle claims that she believed were barred by statute. This evidence is sufficient to show that Day-Peck was on notice of the facts concerning her claim. *See LaMure*, 1996-NMCA-099, ¶ 27 (holding that the client need not know that the attorney has actually breached the duty of care for a cause of action in legal malpractice to accrue); *see also Sharts*, 1994-NMSC-114, ¶ 17 (using as an example of actual knowledge sufficient for a malpractice claim to accrue a statement by the client that he suffered business losses as a result of bad advice from his attorney).

**{53}** This case differs from *Brown* in one other significant way: In *Brown*, this Court was concerned about forcing a client to hire counsel to check on prior counsel's work. 2004-NMCA-028, ¶¶ 13-14. In this case, Day-Peck voluntarily hired two lawyers (in addition to Attorney Threet) to investigate Attorneys' work and to advise her about whether Attorneys' work was flawed. Thus, Day-Peck sought and received professional advice on her claims during 2008 and 2009, long before the 2013 date she claims as the accrual date for her cause of action.

**{54}** We agree with the district court that this evidence is sufficient to establish the fact that Day-Peck knew that "there may have been serious errors[,]" *see LaMure*, 1996-NMCA-099, ¶ 22, in Attorneys' work that resulted in loss of life insurance benefits by late 2009 or January 2010. The four-year statute of limitations for legal malpractice, therefore expired, at the latest, in January 2014: eleven months before this action was filed. We therefore affirm the district court's order dismissing Day-Peck's claims as barred by the statute of limitations.

## IV. The District Court Did Not Abuse Its Discretion in Its Award of Costs Pursuant to Rule 1-054 NMRA

**{55}** Finally, Day-Peck challenges the district court's award of costs pursuant to Rule 1-054, claiming that the district court erred (1) in awarding Attorneys the $18,639.80

cost of reconstructing Day-Peck's computer hard drive; and (2) in assessing all costs against Day-Peck, rather than dividing them among Day-Peck and Children. We affirm the district court's award of costs.

## A. Background

**{56}** The need to recover documents from Day-Peck's hard drive arose during discovery related to the statute of limitations. Day-Peck claimed in her complaint that Attorneys concealed information about New Mexico statutes exempting life insurance proceeds from creditors. Pursuant to Section 37-1-7, Day-Peck asserted that Attorneys' fraudulent concealment of documents and information delayed the running of the limitations period until she allegedly first discovered the fraud in 2013. In support of her claim, Day-Peck specifically denied having received letters and e-mails from Attorneys in which Attorneys claimed to have discussed the exemption statutes and explained creditors' countervailing arguments. In discovery in preparation for filing their motion for summary judgment on the statute of limitations, Attorneys requested that Day-Peck produce all correspondence and other documents received from them.

**{57}** In response to Attorneys' requests for production, Day-Peck claimed to have no documents other than those produced by Attorneys themselves in discovery. According to Day-Peck, any correspondence, memoranda, drafts, and e-mails from Attorneys that she had retained were on the hard drive of her old laptop, which was corrupted and was not accessible. Attorneys filed a motion to compel Day-Peck to produce the laptop so it could be reconstructed and the documents extracted. After the motion to compel was filed, Day-Peck agreed to allow Attorneys to reconstruct the hard drive and have the documents extracted, pursuant to a complex agreement that preserved her claims of privilege.

**{58}** Attorneys extracted thirty-six thousand data files. Fifty-four pages were used as exhibits to Attorneys' summary judgment motion on the statute of limitations. These documents were used to establish that Day-Peck had received letters, memoranda, and e-mails from Attorneys discussing the exemption of life insurance proceeds from creditors and alerting Day-Peck to creditors' claims that the exemption did not apply.

## B. Cost of Recovering Day-Peck's Hard Drive

**{59}** The reconstruction of Day-Peck's hard drive and the extraction of the documents cost $18,639. Day-Peck does not contest the reasonableness of the amount. Her sole claim is that reconstruction of a hard drive is a copying cost, which is not allowable pursuant to Rule 1-054(D)(2)'s provision allowing copying costs only if the copy is admitted as an exhibit. Attorneys contend, in response, that the district court had discretion to award the cost of the reconstruction of the Day-Peck laptop as a necessary and reasonable cost incurred in litigating this case, rather than as a copying cost. We agree with Attorneys that the district court's authority to allow the recovery of litigation costs extends beyond the costs described by Rule 1-054 as "generally recoverable."

The district court's award of the cost of reconstructing the laptop was not an abuse of its discretion under the parameters set by Rule 1-054 and New Mexico precedent.

**{60}** Under the authority granted by what is now Rule 1-054(D), "the district court has the discretion to award prevailing parties necessary and reasonable costs incident to their prosecution or defense of an action." *Dunleavy v. Miller*, 1993-NMSC-059, ¶ 39, 116 N.M. 353, 862 P.2d 1212; *see also Bernier v. Bernier ex rel. Bernier*, 2013-NMCA-074, ¶ 41, 305 P.3d 978 ("District courts have the discretion to grant a prevailing party the necessary and reasonable costs incurred in litigating a case." (internal quotation marks and citation omitted)).

**{61}** Rule 1-054(D)(2) provides a list of costs which "generally are recoverable." In contrast, Rule 1-054(D)(3) lists costs which "generally are not recoverable." The district court has discretion to allow the recovery of unusual expenses not specifically authorized by rule, statute, or case law, but the district court is directed to "exercise this discretion sparingly," *Dunleavy*, 1993-NMSC-059, ¶ 40, and in the event of an award, to "explain the circumstances justifying the award." *Bernier*, 2013-NMCA-074, ¶ 41 (internal quotation marks and citation omitted).

**{62}** The award of the costs of reconstructing a hard drive and extracting documents is an unusual expense: it is not listed in rule or in statute and has not been previously addressed in our case law. The district court explained that it awarded this expense as a cost because it properly should have been borne by Day-Peck as part of her obligation to produce documents sought in discovery that were necessary to move the case forward. Because Day-Peck' counsel refused to produce the documents, leaving Attorneys saddled with making "significant efforts . . . to secure information so that this case could move forward," the court awarded the costs of recovering the documents to Attorneys.

**{63}** We agree with the district court that the costs here were not routine costs for the photocopying of documents and that the expense of reconstructing the laptop and extracting the documents was a cost necessary to resolve this litigation. We therefore find that the award of this cost was a proper exercise of the district court's discretion to "award prevailing parties necessary and reasonable costs incident to their prosecution or defense of an action," even when those costs are not specifically authorized by Rule 1-054(D). *See Dunleavy*, 1993-NMSC-059, ¶ 39.

## C.     Allocation of Costs to Day-Peck

**{64}** Day-Peck also claims on appeal that that the district court erred in charging the costs to her, rather than dividing them among the four Plaintiffs. The general rule is that the district court "has sound discretion to award, deny, and/or apportion costs." *Eskew v. Nat'l Farmers Union Ins. Co.*, 2000-NMCA-093, ¶ 7, 129 N.M. 677, 11 P.3d 1229. Under the circumstances of this case, we conclude that the district court's apportionment of costs solely to Day-Peck was a proper exercise of the court's discretion.

**{65}**     The record shows that the district court had bifurcated the proceedings in this case, allowing discovery on the statute of limitations issues to be pursued first. The costs sought by Attorneys and awarded by the court related to the litigation on the statute of limitations and to the litigation leading to the disqualification of Plaintiffs' counsel. With the exception of Alexander's claims (which the court held were barred based on the passage of time since he achieved the age of majority) Children's claims were not dismissed on statute of limitations grounds. Because J.D. and M.D. were minors at the time the litigation was commenced, their claims were not barred by the statute of limitations and their interests were not at stake in the litigation on the statute of limitations. As to the litigation disqualifying Plaintiffs' counsel, the court found that Day-Peck was responsible for the conflict of interest and for the failure to resolve it early in the case. The court also found that the common representation of Children and Day-Peck, insisted on by Day-Peck for much of this case, was not in Children's best interests. *See generally Sanders v. Rosenberg*, 1997-NMSC-002, ¶ 10, 122 N.M. 692, 930 P.2d 1144 (holding that "[i]n New Mexico, there is a strong tradition of [our courts] protecting a child's best interests in a variety of circumstances" and in weighing those interests based on equity (internal quotation marks and citation omitted)).

**{66}**     Because the costs assessed were attributable to Day-Peck's protection of her own interests, not Children's, and because a final order was entered only as to Day-Peck and Alexander, it was not an abuse of discretion for the court to refuse to assess any of the costs to J.D. and M.D. As to Alexander, Day-Peck claimed to represent his interests throughout the litigation with his power of attorney, and, therefore, the court's assessment of costs to Day-Peck (without barring her from seeking to recover a portion of the costs from Alexander), also is supported by the circumstances in this case and is not an abuse of the district court's discretion.

**CONCLUSION**

**{67}**     We affirm the district court's disqualification of Plaintiffs' former counsel, the court's grant of summary judgment dismissing Day-Peck's and Alexander's complaint as barred by the statute of limitations, and the award of costs against Day-Peck.

**{68}    IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**BRIANA H. ZAMORA, Judge**